UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| NEIL SNOWDEN ) | No. 05 B 57906 |
|         Debtor. ) | |
| _____ ) | |
| NEIL SNOWDEN, SR., ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 06 A 01181 |
| ) | |
| LITTON LOAN SERVICING, INC. ) | |
| and U.S. BANK, N.A., ) | |
|         Defendants. ) | |

**MEMORANDUM OPINION ON**
**PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF**

This Adversary proceeding relates to the bankruptcy of Plaintiff/Debtor Snowden ("Snowden" or "Plaintiff") filed under Chapter 13. Many months before the Adversary was filed, the automatic stay was annulled and the Defendant Litton Loan Servicing, Inc. ("Litton Loan") completed its mortgage foreclosure and evicted Snowden and his family from their home. A motion filed months afterward to vacate the annulment order was denied.

Plaintiff's "Complaint says that the named defendants or each of them" conducted a foreclosure sale prior to his bankruptcy filing. His "Complaint for Preliminary Injunction" seeks injunctive relief to compel the Defendants/Creditors to re-admit him and his family into their former home, and to prohibit Defendant from selling that property while he appeals the annulment order.

Following oral argument, and based on the undisputed facts set forth below, and the verified complaint, the request for injunction is by separate order denied.

## UNDISPUTED FACTS

1. Prior to filing the instant bankruptcy case, Snowden was a defendant in a mortgage foreclosure proceeding brought by Litton Loan as servicing agent for U.S. Bank in Cook County, Illinois. Foreclosure judgment entered on September 9, 2005. A Foreclosure sale was held thereon prior to the filing by Debtor of his bankruptcy.

2. Litton Loan as agent or U.S. Bank purchased the foreclosed property at the judicial sale for an amount less than the balance due on the mortgage note.

3. As required under the Illinois Mortgage Foreclosure Law ("IMFL"), the sale was confirmed by a state court. An order indicating such was entered on October 5, 2005.

4. Snowden filed his voluntary Chapter 13 petition, along with a Plan, on October 15, 2005. In his Plan, Snowden sought to cure the default on the mortgage note to Litton Loan over life of the Plan. The Plan has not yet been confirmed and is next scheduled for hearing on October 19, 2006.

5. On November 8, 2005, Litton Loan filed a Motion in Snowden's bankruptcy case to Annul the Automatic Stay in order to validate its actions after bankruptcy was filed before it learned of the bankruptcy. In its motion, Litton Loan incorrectly alleged that a third party had purchased Snowden's property at the foreclosure sale. Relying on the Seventh Circuit Court of Appeals' decision in Colon v. Option One, 319 F.3d 912 (7th Cir. 2003), it argued that the automatic stay should be annulled because the property was not a part of Snowden's bankruptcy estate. Snowden did not file a response to the motion or dispute the allegations stated therein.

6.  A hearing on Litton Loan's motion was held on November 23, 2005. An Order granting the motion to annul stay was entered on November 28, 2005. The sale was confirmed and Debtor and his family subsequently lost possession of the property.

7.  On March 9, 2006, Snowden filed a Motion to Vacate Annulment of the Automatic Stay based on Rule 60(b) of the Federal Rules of Civil Procedure. Relying on information obtained from a Litton Loan representative after the annulment Order was entered, Snowden's motion was based on the discovery that Litton Loan and not a third party had purchased the foreclosed property at the judicial sale. He argued that he therefore still held an unexpired statutory right under Illinois law to redeem the property when his bankruptcy case was filed, and that right allowed him to cure the default on the mortgage note in a Chapter 13 plan.

8.  Pursuant to an opinion dated April 14, 2006, the Debtor's Motion to Vacate was denied. In re Snowden, 345 B.R. 607 (Bankr. N.D. Ill. 2006). An Appeal from that denial is pending.

9.  Debtor never moved for stay pending appeal of the annulment order or the order denying his motion to vacate the annulment order. So much time had elasped before current counsel sought to assert the fact that Litton Loan bought at the foreclosure sale rather than a third party that he considered a stay pending appeal unlikely (Complaint, ¶¶10 and 11). Asserting because of those circumstances that he has no adequate remedy at law, he brought this action for injunctive relief (Complaint, ¶12).

10. Plaintiff also alleges that current property value of the subject property results in substantial equity over the Litton Loan debt which will be lost even if Snowden prevails on appeal; that without injunctive relief they will lose possession of their home; that they have been

and will be deprived of self-employment income as a daycare provider operating out of the subject property; and that the spouse's daycare license has been suspended due to their eviction from that property (Complaint, ¶13(a)(b)(c)). While no evidence was taken on these matters, the Complaint was verified and the allegations are assumed to be true for purposes of considering the request for injunctive relief.

## CONCLUSIONS OF LAW

Snowden argues, as he did in presenting his original motion to vacate annulment, that the annulment Order was entered based on a false assertion that the foreclosed property was purchased by a third party and not the mortgagee, Litton Loan. Snowden alleges that his counsel discovered this information from a Litton Loan representative after the Order was entered. Under the Illinois foreclosure statute (discussed more fully below), Litton Loan's purchase at the foreclosure sale afforded Snowden a special right to redeem the foreclosed property. This right had not expired when Litton Loan presented its motion to annul. According to Snowden, that situation now allows him to cure the default on the mortgage note in his Chapter 13 plan over a period of three to five years.

While Litton Loan agrees that it purchased the foreclosed property at the judicial sale, it argues that Snowden's special right to redeem cannot be extended for the life of his Chapter 13 plan; that Illinois law specifically defines the contours of a mortgagor's right to redeem and the Code does not allow for the type of expansion of property rights advocated by Snowden. Litton Loan additionally argues that even if the annulment Order was entered prematurely, it inevitably would have been entered because Snowden's special right to redeem has since expired without being exercised.

### The Bankruptcy Code & the Illinois Mortgage Foreclosure Law

The first issue presented is whether Snowden can use a Chapter 13 case to cure a default on a mortgage attached to his residence when his bankruptcy case was filed after the property was sold at a foreclosure sale but before expiration of his right afforded under state foreclosure law to redeem the property.

Under section 1322(b)(5) of the Bankruptcy Code, a Chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." See also 11 U.S.C. § 1322(b)(3) ("provide for the curing or waiving of any default."). Notwithstanding this allowance and applicable nonbankruptcy law, "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under [section 1322(b)(5)] *until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.*" 11 U.S.C. § 1322(c)(1) (emphasis added).

Under the Illinois Mortgage Foreclosure Law ("IMFL"), a successful bidder on foreclosed property at a judicial sale is awarded a receipt or certificate of sale. 735 ILCS 5/15-1507. Until the sale has been confirmed by a court, "[t]he highest bid received by a sheriff at a judicial sale is merely an irrevocable offer to purchase the property an[d] acceptance of the offer takes place when the court confirms the sale." Citicorp Sav. v. First Chicago Trust Co., 645 N.E.2d 1038, 1045 (Ill. App. Ct. 1995); see also 735 ILCS 5/15-1508. The judicial sale is usually consummated once it is confirmed by a court, where there is no right to redeem after that date.

World Sav. & Loan Ass'n v. Amerus Bank, 740 N.E.2d 466, 474 (Ill. App. Ct. 2000); BCGS, L.L.C. v. Jaster, 700 N.E.2d 1075, 1079 (Ill. App. Ct. 1998).

However, despite entry of a confirmation order, a mortgagor is granted a special right to redeem the property if it was purchased at the foreclosure sale by the mortgagee. This period ends 30 days after the date the sale is confirmed. 735 ILCS 5/15-1604(a). The sale was confirmed October 5, 2005. But if a Chapter 13 case is filed prior to expiration of a redemption right, § 108(b) of the Bankruptcy Code extends the redemption period to 60 days from the date that the bankruptcy case was commenced.[1] Since the bankruptcy case was filed on October 15, 2005, the redemption period expired December 14, 2005. The latter date was three months before Snowden moved to vacate the order annulling stay.

Because the foreclosure sale of Snowden's property was confirmed by a state court judge on October 5, 2005 and the bankruptcy case was filed on October 15, 2006, Snowden points out correctly that his special right to redeem existed on the date of his bankruptcy filing and even on November 28, 2005, the date that the stay was annulled. He further deduces from this that for the purposes of curing his default under section 1322(c)(1) of the Bankruptcy Code, the foreclosure sale cannot be considered complete because his redemption right had not expired when his case

---

[1] Section 108(b) provides:

Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

was filed. Snowden relies primarily on the Seventh Circuit Court of Appeals' decision in <u>Colon v. Option One</u>, 319 F.3d 912 (7th Cir. 2003) for support.

In <u>Colon</u>, the debtor filed a voluntary Chapter 13 petition after the foreclosure sale of her residential real estate but prior to the state court's confirmation of the sale. 319 F.3d at 915. The debtor's plan proposed to cure the default on the mortgage note. <u>Id.</u> Asked to determine "whether, under § 1322(c)(1) of the United States Bankruptcy Code, a Chapter 13 plan may provide for the curing of a default on a debtor's principal residence when the petition and plan were filed after the residence was sold at a foreclosure sale, but prior to the confirmation of the sale in accordance with the IMFL", the Court concluded the following:

> Section 1322(c)(1) of the Bankruptcy Code states that a default on a mortgage lien "may be cured ... until such residence is *sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law*." 11 U.S.C. § 1322(c)(1) (emphasis supplied). The statute's wording and its legislative history both indicate an intent to set the limit on the right to cure no earlier than the date of the judicial sale. This was Congress' response to *In re Roach*. However, the provision's reference to "applicable nonbankruptcy law" requires deference to state mortgage law on the scope of any right to cure after the sale. After our study of Illinois foreclosure law, we cannot conclude that the convergence of § 1322(c) and Illinois foreclosure law provides anything like an absolute right to cure a default up until the time of the confirmation hearing. In this context, neither the wording nor the legislative history provides support for reading § 1322(c) as creating a more expansive right to cure than that which the Illinois Code provides. Indeed, it is clear that any right to cure after the time of the sale would have to be found in the state foreclosure law. The Bankruptcy Code is most logically read in this context to permit cure to the extent that Illinois law does.

<u>Colon</u>, 319 F.3d at 916, 920-21.

Unlike the debtor in <u>Colon</u>, Snowden notes that he still held a statutory right to redeem at the time that his bankruptcy case was filed. He argues that this forecloses any presumption under

7

Colon that Litton Loan is entitled to the property because the property could have been redeemed by him at any time prior to expiration of the redemption period.

Although Snowden's argument may be followed in certain jurisdictions, see e.g., In re Pellegrino, 284 B.R. 326 (Bankr. D. Conn. 2002)(Bankruptcy judge held that section 1322(c)(1), not section 108(b), governs the tolling of a right to redeem a foreclosed property), it holds no weight.

Upon the filing of a bankruptcy, an estate comprised of all legal and equitable interests of a debtor is created. 11 U.S.C. § 541(a). Illinois law determines whether, and to what extent, a debtor has a legal or equitable interest in property at the commencement of a bankruptcy case. Matter of Yonikus, 996 F.2d 866, 869 (7th Cir.1993) (citing Butner v. United States, 440 U.S. 48, 55 (1979)). Under the Illinois Mortgage Foreclosure Law, the "Owner of Redemption", or mortgagor, holds a fee title. Van Fleet v. Van Fleet, 467 N.E.2d 592, 595 (Ill. App. Ct. 1984); 735 ILCS 5/15-1212. Compare Goldberg v. Tynan, 773 F.2d 177, 179 (7th Cir. 1985). The mortgagor also holds legal title to the foreclosed property until a deed is issued to the holder of a certificate of sale. See Newport Condo. Ass'n v. Talman Home Fed. Sav. & Loan Ass'n, 545 N.E.2d 136, 139 (Ill. App. Ct. 1989); Van Fleet, 467 N.E.2d at 595. In Illinois,

> [a]fter the expiration of the period of redemption[,] the title of the mortgagor would be absolutely gone, in the sense that the purchaser had become absolutely entitled to a conveyance of it; and in this sense it has often been said that his title is gone, but it is never actually out of him until a conveyance is made. . . . The mortgagor's right is gone if the purchaser complies with the statute, and avails himself of the right to a conveyance of the title. By the decree and by the statute the title of the mortgagor and those claiming under him would only be divested, and the legal title vested in defendant, upon the execution of a deed.

Van Fleet, 467 N.E.2d at 595 (citing Lightcap v. Bradley, 58 N.E. 222, 227-28 (Ill. 1900)). See also 735 ILCS 5/15-1508, 1509. See e.g., Federal Nat'l Mortg. Ass'n v. Joseph (In re Joseph), 93 B.R. 151, 155 (N.D. Ill. 1988); In re Cadwell's Corners Partnership, 174 B.R. 744, 751-52 (Bankr. N.D. Ill. 1994); Agribank, FCB v. Rodel Farms, Inc., 623 N.E.2d 1016, 1020 (Ill. App. Ct. 1993). "If a deed is never issued to the holder of the certificate of sale, the title remains in the holder of the right to redeem and does not revest in him." Van Fleet, 467 N.E.2d at 595.

A Seventh Circuit panel noted in Goldberg v. Tynan that under Illinois law, the only asset that passes into a bankruptcy estate when a mortgagor files a Chapter 13 petition prior to expiration of a redemption right is the statutory right of redemption under state law. 773 F.2d 177, 179 (7th Cir. 1985); In re Carter, 312 B.R. 356, 359 (Bankr. N.D. Ill. 2004). Compare 11 U.S.C. § 541(d). Unless this right is exercised within the statutory time limits under state law or as extended by Bankruptcy Code section 108(b), when applicable, the debtor loses whatever right he may have to redeem the property; this re-enforces the right of a holder of a certificate of sale to obtain legal title and possession of the property as a matter of law. See, e.g., Tynan, 773 F.2d at 179 (Court held that the debtor's failure to redeem the foreclosed property resulted in ownership vesting "totally and completely in the foreclosure purchaser.").

Therefore, despite Snowden's contention, section 1322(c)(1) of the Bankruptcy Code does not permit a debtor to toll the redemption period for the life of a Chapter 13 plan. Accord Canney v Merchants Bank (In re Frazer), 284 F.3d 362, 372 (2d Cir. 2002) (section 108(b), not section 362(a), governs the tolling of a period to redeem); Tynan, 773 F.2d at 179 (holding that redemption period cannot be tolled over the life of a Chapter 13 case); Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 277 (8th Cir. 1983) (section 362(a) cannot be used to toll the

9

period to redeem foreclosed property). Section 108 explicitly defines the minimum and maximum time periods in which a debtor or trustee must act on a right to redeem foreclosed property. Although section 1322(c) was enacted after section 108(b) was introduced into the Bankruptcy Code, section 1322(c) cannot be read to override the time provisions outlined in section 108(b). "Absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with exiting law and its judicial construction." In re Witt, 113 F.3d 508, 513 (4th Cir. 1997) (quoting Estate of Wood v. C.I.R., 909 F.2d 1155, 1160 (8th Cir. 1990) and Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 277 (8th Cir. 1983)).

Any right Snowden once had to cure the default on the mortgage note under section 1322(c) was only permitted to the extent that it is allowed for in Illinois law. See Colon, 319 F.3d at 921. By operation of section 108(b), Snowden had the extended period until December 14, 2005 to exercise his redemption right. Under the Illinois law, this would have required him to pay the foreclosure sale price plus all additional costs, and expenses incurred by the mortgagee plus interest at the statutory rate prior to expiration of that extended redemption period. See 735 ILCS 5/15-1604. Such right cannot be stretched to extend throughout the life of a Chapter 13 plan. Allowing a mortgagor to tender payments over an extended period of time would defeat the purpose of a foreclosure action. Because Snowden could not or decided not to exercise this right, it expired by operation of law on December 14, 2005. Reading most broadly the reasoning in the Seventh Circuit Colon opinion, because Snowden's rights to redeem extended after the sale confirmation order, had the point been timely raised the motion to annul might have been continued until December 14, 2005 when the special right of redemption terminated. But after that date, under Colon, Snowden's rights in the property entirely ended when his redemption

10

right ended, and the annulment order would have entered then. In any event, Snowden's counsel did not raise the issue until many months after his redemption right expired.

### "Newly Discovered Evidence" Under Rule 60(b) Fed.R.Civ.P.

The foregoing discussion assumes arguendo that Snowden could raise this issue by motion filed on March 9, 2006, to vacate the order of annulment entered November 28, 2005, over three months earlier, or can now do so in this Adversary. But he cannot do so.

Under Rule 60(b) Fed.R.Civ.P. (as adopted by Rule 9024 Fed.R.Bankr.P.), a party can seek relief from a final judgment, order or proceeding based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . . ." Fed. R. Civ. Pro. 60(b)(2). Such relief is extraordinary in nature and will only be granted in exceptional circumstances. Providant Sav. Bank v. Popovich, 71 F.3d 696, 698 (7th Cir. 1995). In this circuit, a movant must prove that:

    (1) the evidence was discovered following trial;
    (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;
    (3) the evidence is not merely cumulative or impeaching;
    (4) the evidence is material; and
    (5) the evidence is such that a new trial would probably produce a new result.

See Jones v. Lincoln Elec. Co., 188 F.3d 709, 732 (7th Cir. 1999). A motion premised on Rule 60(b)(2) must fail if any one of these prerequisites is not satisfied. Matter of Wildman, 859 F.2d 553, 558 (7th Cir. 1988).

In his earlier motion, Snowden relied on the "newly discovered evidence" clause of Rule 60(b) as the basis for his motion. Rule 60(b)(2) is designed to allow modification of a prior ruling when evidence comes to light after a ruling that could not have been learned earlier. See Bell v. Eastman Kodak Co., 214 F.3d 798, 801 (7th Cir. 2000). Obtaining relief under Rule 60(b)(2) is extraordinary and as the Seventh Circuit Court stated in Publicis Comm'n v. True N.

11

Commc'ns, Inc., "[a] party needs awfully good stuff to win a Rule 60(b)(2) motion." 206 F.3d 725, 730 (7th Cir. 2000). Snowden, however, has not presented such "awfully good stuff" that vacation of the order is warranted.

Snowden's "newly discovered evidence" consists of his counsel's discovery after the annulment Order was entered that the creditor Litton Loan was the purchaser at the foreclosure sale. However this evidence obviously could have been discovered either at the foreclosure sale or, at least prior to filing the bankruptcy case. It certainly could have been learned before the annulment order was entered. Snowden provides no excuse for his failure to exercise due diligence in discovering this information or raising the issue when annulment was sought. See Rutledge v. United States, 230 F.3d 1041, 1052 (7th Cir. 2000). For undisclosed reasons, he waited until March 9, 2006 before first seeking redress in this forum by motion attacking the Order.

Moreover, for reasons discussed earlier, the information would not have produced a different result if presented at the hearing on Litton Loan's annulment motion. At best, it could arguably have delayed issuance of the annulment Order until Snowden's right to redeem had expired on December 14, 2005. Snowden has not demonstrated or even argued that the annulment Order did or could have prevented him from exercising his redemption right. That right lapsed under Illinois law because he was not able to exercise it.

### STANDARDS FOR INJUNCTION

The standards recognized in the Seventh Circuit for considering a preliminary injunction were set forth in Anderson v. USF Logistics (IMC), Inc., 274 F.3d 470, 474-475 (7th Cir. 2001):

> The purpose of a preliminary injunction is to minimize the hardship to the parties pending resolution of their lawsuit. Id. at 816 n.4. In assessing whether a preliminary injunction is warranted, the party seeking the injunction must demonstrate that: (1) it has a reasonable likelihood of success on the merits of the

underlying claim; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the preliminary injunction is denied. See Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001). If the court is satisfied that these three conditions have been met, it then must consider whether the irreparable harm the applicable will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted. Id. In addition, the court must determine whether the preliminary injunction will harm the public interest. Id.

Under circumstances of facts and events described above, Snowden does not make the requisite "strong showing" of likely success. Hilton v. Brainskill, 481 U.S. 770, 7676 (1987).

Indeed, because of the conclusion that Debtor lost all ownership rights under Illinois law after the foreclosure sale once his redemption rights had expired, a conclusion also based on Seventh Circuit authority, his chance of success is nil.

It is true that "strong showing" of "likelihood of success" that might warrant an injunction is sometimes viewed as a requirement of reasonable probability of success and is only one of the several factors to be considered, the others being inadequate remedy at law and irreparable harm if relief is not granted and balance of harm between the parties. Maryland Undercoating Co. v. Payne, 603 F.2d 477 (4th Cir. 1979). Debtor had several adequate remedies at law which he did not exercise. First he could have come to court to oppose the motion to annul stay because his right to redeem had not yet expired. Second, if he truly had the large equity that he claims, he could have refinanced the property and paid off his creditor's debt before the right to redeem expired. Third, he could have filed timely appeals from the order annulling stay and sought a stay pending appeal directly instead of seeking the indirect benefit thereof in this case. Having neglected his remedies at law, he can hardly rely on that neglect to argue that he has no remedies at law.

The great harm that Debtor and his family will suffer from losing the home is evident, but he lost all property interest in the property once his right to redeem expired and therefore the harm was done before this Adversary proceeding was filed.

Indeed, there is now no mortgage that now survives under Illinois law for him to cure in this Chapter 13 case. So if the requested injunction were entered, Debtor and his family could live in the home free of mortgage obligations and the creditor would have no security.

The status quo is that Plaintiff holds no property interest in the property but wants an injunction to revive a dead mortgage relationship or at least give possessory rights to Debtor that he is not entitled to.

## CONCLUSION

In light of the foregoing, Snowden's Motion to Vacate Annulment of the Automatic Stay was denied.

For the same reasons, there is no merit to Snowden's attempt to reassert the same history and facts as the basis for his present Complaint for Injunctive Relief. Under applicable Illinois law, he lost all his property rights to his home, not on the date of foreclosure sale, but on December 14, 2005 when his rights to redeem expired. This was well before he filed the instant Adversary Complaint.

Therefore, it is concluded that injunctive relief must be and is denied despite the unhappy consequences to him and his family.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 11th day of October 2006.